## JOHN FLUMMERFELT'S EXECUTORS

*v.*

## MARY A. FLUMMERFELT et al.

1. In case it appears upon the reading of a will that a brother and a sister charge another sister with using undue influence in procuring superior benefits under the will, in her own behalf, and threaten if she does not surrender those benefits they will resist the probate of the will and exhaust the estate in litigation, and thereby procure her signature to an agreement by which she does surrender the benefits given her by the will, and it also appears by the pleading, presented by those who seek to enforce the agreement, that such sister, the defendant, was wholly ignorant of all business, and had had no experience, and was likely to be imposed upon, and to be misled, and that she had no legal advice as to the nature and extent of her rights, such agreement will not be enforced.

2. Section 24 of the act concerning wills will pass the title to lands acquired by the testator after the making of his will, in which he says: "I want my children or their heirs to share and share alike in my estate."

3. When the testator directs the interest of a sum certain to be paid to his widow annually, and he directs the investment of such sum on bond and mortgage or on notes with security, the first payment of interest is not due until the end of the second year after the death of the testator.

On bill for construction of will and to enforce an agreement.

*Mr. Joseph M. Roseberry*, for the complainants.

*Mr. George M. Shipman*, for the defendants.

BIRD, V. C.

The bill in this case is filed in order to ascertain the proper construction of the will of John Flummerfelt, deceased, and also to enforce a written agreement made between the legatees and devisees named in said will, which modified the provisions of the will, and also to procure the settlement of the estate in this court. The construction of the will by the court involves the question whether the terms of the will are sufficiently broad to include real estate purchased after the execution of the will, and whether a debt due to the testator in his lifetime was discharged by a small legacy given to the debtor; and whether the gift of the interest of a certain sum payable annually to the widow of the testator is due and payable at the expiration of one year after his decease, or at the expiration of two years.

The answer and cross-bill of Mary Flummerfelt, one of the parties to the said agreement, alleges that it was obtained from her by the other parties thereto by fraud, and that when she signed it she did so in ignorance of her rights.

In my judgment this agreement ought not to be enforced. In the eyes of the law I think it was unfairly obtained from the defendants. The complainants may not have intended to impose upon Mary, but that they had her at a great disadvantage is clear. This is manifested beyond question by their answer to her cross-bill. The complainants are men of more or less business capacity and experience. In a very few days after the death of the testator the will was read in the presence of the parties interested therein, and Amos Flummerfelt and Mrs. Lanning were prompt and decisive in their expressions of dissatisfaction with the disposition which their father had made of his estate, in providing for the sister Mary, and charged her with undue influence and unlawfully interfering to bring about the devise in her own

28

behalf. And I have no doubt but that they threatened litigation and made her believe that they would be able to expend the whole estate in the controversy. It is agreed on both sides that the agitation was continued until Mary and her mother yielded the point in dispute and promised to enter into the agreement which was signed.

The complainants consulted counsel and had the agreement in question prepared, and in a few days after the first interview had it executed by Mary and her mother, without the latter having any further or other information respecting their rights than they had at the first interview. They had consulted no counsel, neither of them had any experience in business and were almost absolutely ignorant of their rights, as the answer to said cross-bill establishes, and according to the same authority the complainants fully knew. The answer uses this language:

"These complainants expressly insist and charge that the said Mary A. Flummerfelt was entirely inexperienced and has absolutely no business knowledge, and knows nothing of the settlement of an estate, or of the disposition or settlement of funds or the worth and value of securities, or when property is sufficiently invested or how to invest the same, or of the collection of the funds and moneys due the estate, and when the same should or should not be collected, and that she, for that reason, would be entirely guided by the advice of other people, whether that advice be good or bad, and that she, the said Mary A. Flummerfelt, would or might, in that manner, cause great loss and hardship to the estate, and cause, perhaps, these complainants trouble and loss."

This is the language of a brother and a brother-in-law. It shows most conclusively that they not only relied upon her ignorance, but upon her weakness, in their efforts to procure the agreement in question. If they believed that she would yield readily to the advice of strangers, to the detriment of the estate, how much more would she yield to their advice when they undoubtedly held up to her the promise that they would settle the estate to her advantage and preserve peace and harmony, if she would sign the agreement surrendering the special benefits given to her by the will. Stronger proof of inequality of position and of opportunity to exert undue influence could not well be presented.

Flummerfelt's Executors v. Flummerfelt.

Another question presented for consideration is whether a lot of land purchased by the testator after the execution of his will passed by the terms of his will in consideration of the twenty-fourth section of the act respecting wills. *Rev. p. 1248.* The statute says that the real estate so acquired

"shall pass, by any general or special devise or sale under any power of sale contained in the will of any person dying after the 4th day of July, 1850, sufficient to include it, had the same been acquired before the making of the will, unless a contrary intention be manifest on the face of the will."

It will be seen that it is only necessary for it to appear that there exists a general or special devise sufficient to include it, or a general or a special power of sale, unless the contrary appears. In this case the contrary does not appear. Besides such absence, there must be a general or special devise or power of sale, and such devise or power must be broad enough to include the after-acquired property as fully as though it had actually been acquired before the making of the will, or as though the will had been executed at the moment before the testator's death.

Is there any such general or special devise, or general or special power of sale in the will in question? The testator first directs the payment of his debts and funeral expenses, then provides for the investment of $4,000 for the benefit of his widow and the payment of $300 to his daughter Mary Ann, and then says: "After that is done I want my children or their heirs to share and share alike in my estate." He next gave the house and lot which he owned at the time of making his will to his widow during her life, and at her death directed the same to be sold and the proceeds of such sale to be divided amongst the children of Amos Flummerfelt, his son, and Margaret Lanning, his daughter.

It is my judgment that the language used by the testator, "I want my children or their heirs to share and share alike in my estate," when read in the light of the statute, most clearly comprehends the lot subsequently purchased. The language is brief and simple, but no multiplication of words or phrases could enlarge its scope or meaning. It is as though he had said: "I

want my children or their heirs to share and share alike in all the real and personal estate of what kind soever and whensoever acquired that I may die seized or possessed of." *Garrison* v. *Garrison, 5 Dutch. 153.*

The indebtedness of Amos Flummerfelt, one of the children and legatees under the will, is not discharged by the small legacy given to him. I can discover nothing which gives the slightest intimation that the testator had any such intention.

The house and lot given to the wife of the testator must be kept in repair by her during life, at her own cost, and not at the cost of the testator's estate, and at the cost of Mary Ann, who has a life estate therein after her mother. *In re Steele, 4 C. E. Gr. 120; In re Heaton, 6 C. E. Gr. 221; Thomas* v. *Thomas et al., 2 C. E. Gr. 356; Crane et al.* v. *Van Duyen et al., 1 Stock. 259; Kearney* v. *Kearney, 2 C. E. Gr. 59; Haulenbeck* v. *Cronkright, 8 C. E. Gr. 407.*

The testator gives to his widow the interest of $4,000, payable annually, and directs it shall be invested on bond and mortgage or notes with good security. It is insisted that, under this provision, the widow is not entitled to her said legacy or annuity until the estate has been settled and the $4,000 invested as directed and the interest thereof collected.

This is not an annuity, strictly speaking, payable out of the estate of the testator, although it is the payment, annually, of the interest of a certain sum, which sum is to be invested by the executors for the purpose of raising the annual interest. In the former case the annuity begins to run from the testator's death, and is payable at the end of a year, and in the latter the interest begins to run at the end of one year from the testator's death, but is not payable until the end of the second year from his death. This distinction is pointed out in the case of *Welsh* v. *Brown, 14 Vr. 37.* According to that case, which was carefully considered, the general doctrine is that legacies are not payable until the expiration of one year, and that until that time interest does not begin to accrue thereon unless otherwise provided by the testator, either by express words or fair implication, except in case of infant children or of infants towards whom the testa--

tor stands *in loco parentis.* This view was sustained in *Marsh* v. *Taylor, 16 Stew. Eq. 1; Stout* v. *Stout, 17 Stew. Eq. 479; Davison* v. *Rake, 17 Stew. Eq. 506.* These cases and that of *Van Blarcom* v. *Dager, 4 Stew. Eq. 783,* show the exceptions to the general rule.

I think, under the circumstances of this case, the executors and executrix should be required to proceed with the settlement of the estate in this court. I will advise a decree in accordance with these views.